I represent the appellants Armstrong and Voisine. The issue before the court this morning is one of statutory construction and it is whether recklessness falls within the ambit of the term use or attempted use of physical force as contained in 18 United States Code section 921A33A. This is on remand from the United States Supreme Court and we are not writing against a blank slate but rather the court has considered this issue once before most recently in United States v. Carter which was authored by Judge Tortuella. It was not conclusively decided in that case whether use of force as contained in the statute does or does not encompass recklessness but it was recognized that Castleman or the United States Supreme Court decision in Castleman affects this interpretation. In these two cases the Shepard documents fail to show any factual basis for the convictions themselves and so there were no facts put forth in the plea transcript in the criminal complaints that were filed or were otherwise contained in the Shepard documents. That shows that the court has to assume that the convictions were had under the least onerous factors that could be had pursuant to a main conviction and therefore because a main conviction can be committed intentionally, knowingly or recklessly and can include either bodily injury or offensive physical activity. In the case of the Shepard documents, the court has to I believe it does. And since the question here is not an abstract question, we'll agree on that, but a question of whether the main statutory definition is sufficient, why isn't that sufficient? It is not sufficient because one may act recklessly without acting intentionally. Otherwise, there is no purpose for the main statute to differentiate between reckless conduct and intentional conduct. When there is a difference between what is reckless conduct so that one may consciously disregard the fact that arguing with one's spouse on any level may cause discord and that something that would in normal circumstances not be taken as being offensive may, when you are arguing, be taken as offensive, that is where the normal, reasonable, prudent person may lose sight. Must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same circumstances? That is certainly a degree of intentionality. It is not a degree of intentionality that would cause it to be an intentional crime, though, because if it were an intentional crime, it would then read out of the statute the differentiation. So your argument is that the use of the word intentional means that any degree of recklessness cannot satisfy the standard of intentionality. That is correct, Your Honor. Regardless of the definition. If you define recklessness to mean intentional, it is contrary to the canon of statutory construction. Hasn't Maine structured its law to give a jury a bit of leeway as to whether conduct is intentional or reckless, but it all involves a sufficient degree of consciousness to meet the requirements of federal law? No, Your Honor. Why not? Because, again, if you combine the two standards of recklessness and intentionality under Maine law, and you say that we are going to say this is intentional for purposes of federal law, but really what we are saying is that recklessness and intentionality are the exact same thing, but Maine law has a distinction between intentional acts and reckless acts. What the court is doing is reading out any difference between that standard of recklessness and intentionality, which then the canons of statutory construction disapprove. And what did Congress intend to cover? What range of behavior in use or attempted use of physical force? The very first case that the United States Supreme Court conducted or interpreted was the act of use in United States v. Bailey, which was decided in 1995. And so it would appear that when the court, when Congress is acting against a construction of use that has already been construed by the United States Supreme Court, that then that construction should be also read into subsequent legislation. This is a statute which is concerned with possession of firearms by those who have been convicted of domestic abuse, whether it be a misdemeanor or a felony. And it is based on a long legislative history, talking about the statistics that show an extraordinary relationship between prior domestic abuse and then use of a firearm to commit further domestic abuse. And Congress was careful to say this is a special crime for which we intend the net to be cast large. So why does it work to go back to a different statute against that sort of legislative history? We're not going to the statute. We're going to the words. And that is... Okay, so we would have to accept your proposition that the use of this phrase means the same thing regardless of which statute it is in, and that Congress is bound by whatever the Supreme Court's earlier construction in a different statute of the language is. That is in essence what the Castleman remand indicates that this court should consider. Well, wait a minute. The Castleman remand. If the court thought, as you think it's so clear, why the remand? Yes, it's true there are several cases, but they're cases from a different statute with the exception of one which isn't even that close. So if it was as clear as you say, why did the court just reverse and remand? There are actually two cases, one from the Eighth Circuit and one from the Fifth Circuit, which both said that recklessness was not sufficient, I believe. But those are the cases that have addressed this in the context of Section 922G9. The other circuits have not addressed it at all as far as recklessness, but all of the other cases are why recklessness don't fit within the term use of force or attempted use of force. And so there is uniformity except for this one issue in this court. Because even this court has said in the context of armed career criminals, the 2L1.1, I guess the most recent case was United States v. Martinez that was decided August 6th, that was construing the guidelines use of force and recklessness. And that there is a breadth of conduct that can be encompassed by reckless conduct that may also match what falls within this. And so the question is, is this court going to make an exception for the very same words and the very same phrase that has been used consistently in many different contexts as well as this exact same context to say something different? Why not? That is exactly what the case law says, that you have to look at the purpose of the different statute and the language and that there is no such rule as the rule you're espousing. It may be that that is the best or wisest construction, but there is no such rule. There is the rule of the plain language and when language has been construed, when words mean something, otherwise words fail to mean anything except for what one wishes upon them. And that is a problem that creates suspicion as to whether or not the law is being applied uniformly to across the board. And so that when vast numbers of people are deprived of fundamental rights because one of 1,000 may commit a very heinous crime with a firearm, and you condemn the other 999 to being less, having less rights than the normal citizen, then the question becomes, is that a wise construction of the law? We're not going to get into selective enforcement. The question is congressional intent. And exactly, because Congress, when you look at that, there was this whole idea of violence and violence that spanned all of the words of violence that were used were active violence and therefore intentionality. And in the Supreme Court Castleman decision, it also speaks of that intentionality of control even through nonviolent conduct. And so at that point, you do have a uniform construction even with the intent of Congress as to having it be an intentional act. Recklessness not sufficient. Thank you. May I reserve the rest of my time for rebuttal, Your Honor? No. Thank you. You've run over, in fact. Oh, excuse me. I think. Thank you. Good morning, Your Honors. Renee Bunker on behalf of the United States from the District of Maine. May it please the Court. Plain text, context, legislative history, Castleman, common law, and common sense all point toward a holding, toward concluding again that a conviction under Maine's law in particular. Plain text. Plain text. What is the plain text? Judge Troy, the statute itself. That's recklessness. No, turning to 921A33 and G9 has no mens rea at all. So as the Court highlighted in Booker, and certainly Castleman highlighted with regard to the degree of force issue, Congress knows how to enact a heightened mens rea when it chooses to do so. And Castleman highlighted that it knows how to resort to, for instance, Section 16 and the immigration statutes and violence simpliciter or generic definitions of crimes of violence when it chooses to do so. But domestic violence, I think as Chief Lynch has highlighted, both Congress and the Supreme Court have repeatedly found to be something different. Context is key. There we agree. And so since Leocal is the case that drove most of those footnote 8 cases, let's start there. Because in Leocal, which both Castleman and Booker agreed was not the right comparison for G9 purposes, the Supreme Court stated that the party's primary focus on the word, quote, Particularly when interpreting a statute that features as elastic a word as used, we construe language in its context and in light of the terms surrounding it. Excuse me. Footnote 8 of the Supreme Court decision that remains this case, poignantly indicates that only the First Circuit, in contravention to the 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th Circuits, have interpreted the reckless issue differently than we have. Is that of any relevance to this case, considering that they remanded it and they made a point to those cases? Footnote 8 is dicta, albeit Supreme Court dicta. I'm sure every member on this panel is going to go read footnote 8 cases, all of them, very carefully, because of careful reading in light of Castleman's reasoning and holding upon looking at Booker's the only G9 case in footnote 8. And not only, and it's the only, all of the other cases but one address felony crimes of violence or aggravated felonies or felonies for immigration purposes. And based on the Castleman reasoning itself, comparisons to those other footnote 8 cases is inappropriate. That's in addition to that, and we would ask that the two lines of Castleman that even talk about recklessness and those note 8 cases must be considered in light of Castleman's fundamental reasoning. Moreover, note 8 is clearly troublingly incomplete. If the court looks carefully at some of the other cases. One, if we're going to talk about common law battery, which is sort of what we're here to do, what was the mental area? No, we're not. No, I know we're not. What was incorporated in common law battery? Some of, a more appropriate comparison to Booker might be some of the section 113 cases, the federal civil assault statute, that every court that I could find, the 1st, the 2nd, the 9th, the 10th, the 11th, having held incorporated common law battery, which incorporates recklessness. Those are better comparisons in the government's view to Booker than the felony crime of violence cases and the immigration cases that Castleman explicitly said were inappropriate. Moreover, the note 8 is problematic that it omits even Aguiar's, the 3rd Circuit case. The note 8 cites Oibongi, but in Aguiar, a more recent and more relevant case, the 3rd Circuit itself distinguished Oibongi, its own president, and almost every other case in note 8, finding that a reckless sexual assault qualified as a section 16B felony crime of violence, and holding, get this, that that was consistent with Leogol. That's not inconsistent with Booker at all. There they held, it's different. Context matters, the 3rd Circuit held. We're talking about risks of confrontation, and Leogol, the 3rd Circuit highlight, hadn't decided the recklessness issue. So Booker is by no means out of line with the 3rd Circuit, and the 5th Circuit case cited in note 8 is Chapa Garza. Again, a felony crime of violence case. In addition to perhaps looking to the 5th Circuit's Calvet section 113 case, consider Espinoza, the 5th Circuit case we cite, where the court held that reckless, in what we submit as a more relevant context, reckless domestic assault that had been enhanced to a felony under a recidivist statute and qualified as an act of violent felony. So if that's the case, and we submit that case was correctly held, certainly Booker's not out of the line with the 5th Circuit either, especially where here we're talking about a misdemeanor use of force. And turning to the legislative history, what Congress intended, there can be little doubt that Congress, turning to Senator Lautenberg's and other congressional floor statements, which I think in need, this court has repeatedly looked at the legislative history, Hartsock, that congressional history is clear, as Senator Lautenberg put it, this statute would make sure, or hopefully further, keeping firearms out of those who are out of control, who lose control and in anger in the midst of an escalating physical encounter, almost unknowingly, Senator Lautenberg spoke out, reach with one hand for a gun and the other hand to abuse or batter their household intimate family members. So again, plain text, context of domestic violence is different. The Supreme Court has clearly made that clear in Castleman as well. Resort to those other statutes is inappropriate. The common law, we cited 238, authorities spending 238 years for the support of the proposition that common law. There's something about the government's argument which I find a bit troubling. And it is, as a resort to common law principles, one understands that in a statute that says the predicate offense can be either state or federal, and here it's a state offense. And we have a state definition in the statute that would seem to render the common law irrelevant here. And as I understand the federal sentencing scheme, we are looking at Maine's definition of recklessness. It could be some other state has a different definition of recklessness, which is not nearly as sort of robust as to intentionality as this one does. But as I understand the case, we decide according to the state law predicate offense and not general principles, whether they be common law, model penal code, or something else of recklessness. Chief Judge, I think two lines of response to that, if I may. First, I think both of the parties have resorted to common law because of Castleman's holding, is that the degree of force, piece of use of physical force, has incorporated common law batteries, specifically offensive touchings. And so the next question, I think intuitively, was, well, what did common law say with regard to mens rea? And so I think both parties have sort of gone down that alley to say, and we actually agree that if Castleman held that common law and the well-settled principles that attach to common law battery is incorporated, that common law as a whole regarding battery, both its mens rea and actus rea, should be incorporated. So I think that's why we both went down, perhaps it's a rabbit hole, but I think the Castleman discussion about common law and what a significant role that played. And again, now turning back to... Wouldn't that revolutionize federal sentencing law so that what the state law definition means doesn't count for anything anymore? No, I'm not sure, and forgive me, I'm not sure I'm following the sentencing line, but just as I don't think it would alter sentencing with regard to what Castleman just did in terms of the force element, I don't think saying that Castleman and Congress meant to incorporate common law battery as a whole. Then we have Maine's statute, which I think, Chief Judiciary, your characterization of it is accurate. It's a fairly robust statute, and it's conscious disregard. And I noted when I was rereading the cases, looking to Leopold, even Leopold's discussion about 16b talks about conscious disregard of the use of force is what it was qualifying, and it's much closer, particularly when you look, you asked Attorney Villa to continue with that conscious disregard is viewed in the light of the nature and purpose of facts known to the defendant. And I also, in preparing, I know this isn't our briefs, but that rings quite similarly to the willful blindness instruction that is allowed in this court and many others, where it's the willful blindness that even when Congress adds unknowingly mens rea to a statute, willful blindness can suffice. You know, I thought I was trying to get this narrower, and now you're willful blindness. I apologize. It brings conscious disregard, and the government's view in a number of cases support that, much closer to knowingly as defined by Maine law than the sort of failure to know. And the government completely agrees. There will be other statutes. One of the cases talks about a Kentucky statute where the reckless definition there clearly mirrors negligence. And I can't remember the case off the top of my head, but it's a Kentucky statute. That's what I would be worried about. Exactly. Maine's, in Kentucky, Maine's, Kentucky's reckless statute looks closer to Maine's, looks more like Maine's negligence statute. So there will be state-by-state definitions. And with that, unless there are further questions, we'd ask the court to affirm. You got it right in Booker. I mean, Mason, we submit you got it right in Booker. Okay. And since you finished ahead of time, Ms. Vila, you get another minute if you'd like. I could continue to speak. No, thank you. Thank you. It's like cross-examination, one question too many. Thank you, Your Honor. I would just note that 16B includes a flush language, as does the armed criminal statute. And so at certain points, cases are not construing use of forced language anymore. And with that, I would just ask the court. Thank you. Thank you both.